**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**GUY MCQUEEN,**

                                        **Petitioner,**


        v.                                              **9:09-CV-0366**
                                                          **(GLS)**

**ROBERT ERCOLE, Superintendent,**

                                        **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PETITIONER:**

**GUY MCQUEEN**
Petitioner, *pro se*

**FOR THE RESPONDENT**:

**HON. ANDREW M. CUOMO**            **PAUL M. TARR, ESQ.**
Office of the Attorney General        Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

## MEMORANDUM-DECISION AND ORDER

**I.     BACKGROUND**

   **A.     State Court Proceedings**

   The state court records provided to the Court reflect that on March 28, 2006, petitioner,

*pro se*, Guy McQueen was indicted by an Albany County Grand Jury and charged with

committing first degree assault, in violation of New York Penal Law ("Penal Law") § 120.10(1);

two counts of second degree assault, contrary to Penal Law § 120.05(1) and § 120.05(2); and third

degree criminal possession of a weapon, in violation of Penal Law § 265.02(1).  *See* Indictment

No. 8-9841 (Dkt. No. 15-1) ("Indictment").

On April 17, 2006, McQueen appeared before Albany County Court Judge Thomas A. Breslin.  *See* Transcript of Proceeding before Judge Breslin (4/17/06) (Dkt. No. 15-11) ("April, 2006 Tr.").  At that time, the District Attorney indicated on the record that an offer had been extended by the District Attorney to McQueen wherein the prosecutor would allow McQueen to plead guilty to the charge of attempted first degree assault in exchange for a term of imprisonment of five years, to be followed by a term of five years post-release supervision.   McQueen's counsel told the court that his client rejected the offer after the two had fully discussed the proposal.  *Id.* at p. 2.  That plea was then withdrawn by the prosecutor, *id.* at p. 3, and the court then ensured that McQueen was aware that an adverse jury verdict on the first degree assault charges returned against him could result in a potential term of imprisonment of up to fifteen years.  *Id.*

On June 26, 2006, the day McQueen's jury trial on the charges was scheduled to begin, Judge Breslin noted that he had been advised by McQueen's counsel that McQueen wished to enter a guilty plea.  *See* Transcript of Change of Plea (6/26/06) (Dkt. No. 15-11) ("Plea Tr.") at p. 2.  The court noted on the record that McQueen's counsel had been "very persuasive" with both his client and the County Court about McQueen entering, and the Court accepting, a guilty plea, and the court declared that it would "reluctantly" allow McQueen to enter a guilty plea.  *Id.*   The prosecutor and McQueen's counsel then advised the court that, according to the terms of the plea proposal, McQueen would be pleading guilty to attempted first degree assault in satisfaction of all charges brought against him in the Indictment, and in contemplation that he be sentenced to a term of no more than six and one-half years imprisonment, to be followed by five years of post-release supervision.  *Id.* at pp. 2-3.

The court then engaged in an extensive colloquy with McQueen, after which the court accepted his guilty plea to the attempted first degree assault charge.  *Id.* at pp. 3-10.  On August 28, 2006, McQueen was sentenced by Judge Breslin, as a second felony offender, to a term of imprisonment of six and one-quarter years, to be followed by a term of five years post-release supervision in light of his conviction.  *See* Transcript of Sentencing (8/28/06) at p. 6.

On July 12, 2007, before the New York State Appellate Division, Third Department, had issued a decision concerning McQueen's direct appeal, he filed a motion to vacate his conviction under New York Criminal Procedure Law ("CPL") § 440.10.  Dkt. No. 15-2 ("CPL Motion").  In that application, McQueen claimed that:  i) his guilty plea was not voluntarily, knowingly or intelligently made; and ii) he received the ineffective assistance of trial counsel.  *See* CPL Motion, Points One, Two.  In a written decision dated July 31, 2007, Judge Breslin denied the motion.  *See* Dkt. No. 15-3 ("July, 2007 Order").  McQueen sought leave to appeal the denial of his CPL Motion to the Appellate Division, however in its decision dated September 26, 2007, the Appellate Division denied that request.  *See People v. McQueen*, No. 101264 (3d Dep't Sept. 26, 2007) (Dkt. No. 15-5).

On December 11, 2008, the Appellate Division unanimously affirmed petitioner's conviction.  *People v. McQueen*, 57 A.D.3d 1103 (3d Dep't 2008).  McQueen sought leave to appeal that decision from New York's Court of Appeals, however that court denied such application in its order dated February 24, 2009.  *See People v. McQueen*, 12 N.Y.3d 760 (2009).

**B.    This Action**

McQueen commenced the present action in this District on March 30, 2009.  *See* Dkt. No. 1.  This Court thereafter directed petitioner to submit an amended petition if he wished to proceed

with this action, Dkt. No. 3, and on April 17, 2009, McQueen filed an amended pleading in

accordance with this Court's directive.  In his amended habeas application, McQueen asserts that

he is entitled to habeas relief because:  i) his guilty plea was unlawful and involuntarily made; ii)

he received the ineffective assistance of trial counsel; and iii) his conviction amounts to a violation

of his right to due process under the United States Constitution.  *See generally* Amended Petition.

The Office of the Attorney General of the State of New York, acting on respondent's

behalf, filed an answer (Dkt. No. 13) and memorandum of law in opposition to McQueen's

amended petition (Dkt. No. 14).

Subsequent to the filing of his amended petition, McQueen filed various documents,

including a traverse, in further support of his habeas application.  *See* Dkt. Nos. 11, 16, and 17.

This matter is currently before this Court for disposition.

## II.    DISCUSSION

### A.    Applicable Standard of Review

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought

about significant new limitations on the power of a federal court to grant habeas relief to a state

prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted

in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has
> previously been adjudicated on the merits by a state court only if the
> adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an

> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir.

2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76,

88 (2d Cir. 2001). In providing guidance concerning application of this standard, the Second

Circuit has observed that:

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362,]
> at 405-06 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir.
> 2001).... [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it. *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147,

152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's ruling was merely incorrect or erroneous, but instead whether such

decision was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*,

261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in

this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must

identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v.*

*Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). That

increment, however, "need not be great; otherwise habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence." *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks and citations omitted).

    **B.**    **Substance of McQueen's Claims**[1]

        **1.**    **Propriety of Guilty Plea**

McQueen asserts several different theories in support of his claim that his guilty plea must be invalidated by this habeas court.

Specifically, in his initial ground for relief, McQueen asserts that his guilty plea was unlawful and made involuntarily without his understanding the nature of the charge to which he was pleading guilty or the consequences of his plea. *See* Amended Petition, Ground One. In support of this claim, McQueen alleges that he did not have the requisite intent to commit the crime to which he pleaded guilty, and that, throughout the criminal matter – up until the time of his plea – he maintained that he acted in self-defense on the day of the alleged crime. *Id.*

McQueen further asserts that he merely answered "yes," "no," and "guilty" throughout the plea colloquy, *see* Amended Petition, Ground Two, and that he never properly allocuted to the elements required to establish his guilt of the attempted first degree assault charge. *Id.*

He further contends that the trial court failed to fulfill its obligation of ensuring that McQueen did not have a viable defense to the charge before accepting his guilty plea. *See* Amended Petition, Grounds One, Two.

---

[1]As will be seen, McQueen has asserted similar claims in different grounds for relief in his amended petition. For example, both his first and second grounds for relief claim that his guilty plea was not knowingly, intelligently, and voluntarily made. *See* Amended Petition, Grounds One, Two. Additionally, the first three grounds in his amended pleading all assert different theories in support of his claim that he received the ineffective assistance of trial counsel. *See id.*, Grounds One Through Three. After having reviewed the submissions filed by the parties, this Court has found it appropriate to address the claims raised herein by petitioner by reference to the legal theories asserted by McQueen, rather than by the grounds in the amended petition in which he raises his arguments.

i.     **Clearly Established Supreme Court Precedent**

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made).

ii.     **Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

In *Oyague v. Artuz*, 393 F.3d 99 (2d Cir. 2004), the Second Circuit acknowledged that under the Antiterrorism and Effective Death Penalty Act of 1996 a federal habeas court "is required to give deference to findings of fact made by the state court after a full and fair hearing at which the material facts were adequately developed." *Oyague*, 393 F.3d at 104 (citation and internal quotation omitted). Nevertheless, that court opined that "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards." *Oyague*, 393 F.3d at 104 (citations and internal quotation omitted). The *Oyague* court then explicitly held that "the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law ... and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)." *Oyague*, 393 F.3d at 104 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)) (other citations omitted).

This Court therefore considers petitioner's claim challenging the propriety of his guilty plea in light of the Supreme Court precedent noted above as well as the Second Circuit's pronouncement in *Oyague*.

7

The Court's review of the transcript of the proceeding at which McQueen pleaded guilty establishes that at that time, McQueen:  a) was fully advised by Judge Breslin of the rights McQueen would forfeit by entering a guilty plea; b) denied that he had been threatened or coerced into pleading guilty; c) advised the court that he had had a full opportunity to discuss his legal options concerning the criminal charges brought against him, including the availability of any defenses, with his counsel; d) answered the questions posed to him by Judge Breslin in a coherent fashion; e) acknowledged that he was thinking clearly during the plea colloquy; and f) denied having any difficulty communicating with counsel and affirmatively stated that McQueen was "very" satisfied with counsel's representation.  *See* Plea Tr. at pp. 3-8.  He then admitted that on February 13, 2006, he stabbed the victim, Fabricio Samms, multiple times in his right forearm and left thigh, causing blood loss, bruising and swelling to the victim.  *Id*. at p. 9.  McQueen advised the court that he was not under the influence of either drugs or alcohol at the time he assaulted the victim, and thereafter pleaded guilty to attempted first degree assault.  *Id.* at p. 10.

Based upon the foregoing, this Court concludes that McQueen's guilty plea to the crime of attempted assault in the first degree was knowingly, voluntarily, and intelligently entered by the petitioner.  Therefore, the portions of McQueen's amended habeas petition which challenge the voluntary, knowing, or intelligent aspect of his guilty plea are denied as being without substance.

Additionally, in light of the fact that the County Court specifically asked McQueen during the plea colloquy whether he had had the opportunity to discuss with his attorney any defenses he might be able to utilize concerning the criminal charges brought against him, *see* Plea Tr. at p. 9, petitioner's claims that:  a) the trial court wrongfully failed to explore the issue of whether or not McQueen possessed a defense to the charge, *see* Amended Petition, Grounds One, Two; and b) his

guilty plea was invalid because he would have prevailed in the criminal action by maintaining that

he acted in self-defense on the date of the alleged crime, *see* Amended Petition, Grounds One,

Two, are necessarily without substance.

McQueen additionally argues that he did not possess the requisite intent to commit the

crime of attempted assault in the first degree, *see* Amended Petition, Ground One, and appears to

claim that because he did not specifically note during the plea colloquy that he intended to commit

the crime, his guilty plea is invalid.  *Id.*  However, as the court noted in *Nicholas v. Smith*, No. 02

CV 6411, 2007 WL 1213417 (E.D.N.Y. Apr. 24, 2007), *aff'd*, *Nicholas v. Smith*, 329 Fed.Appx.

313 (2d Cir. May 14, 2009) (unpublished):

> [the] absence of any reference to petitioner's understanding of the
> intent of the offenses to which he pled guilty is not, in and of itself,
> a fatal flaw.  The Supreme Court explained in *Henderson*,[2] that "it
> may be appropriate to presume in most cases defense counsel
> routinely [explained] the nature of the offense in sufficient detail to
> give the accused notice of what he is being asked to admit."  *Id.* at
> 647.  Moreover, it is generally appropriate to presume that a
> defendant is given adequate notice of the charges against him when
> the indictment was read at the arraignment or through discussions
> with counsel.  *See Marshall v. Lonberger*, 459 U.S. 422, 437 (1983)
> ("respondent must be presumed to have been informed either by his
> lawyers or at one of the presentencing proceedings, of the charges
> on which he was indicted"); *Oppel v. Meachum*, 851 F.2d 34, 38 (2d
> Cir. 1988).

*Nicholas*, 2007 WL 1213417, at *5 (footnote added).

As the Appellate Division properly found in denying McQueen's appeal, petitioner "did not

make any statements during the plea allocution that negated an element of the crime charged or

called into question his guilt."  *McQueen*, 57 A.D.3d at 1103.  Moreover, as noted above, before

---

[2] *Henderson v. Morgan*, 426 U.S. 637 (1976).

accepting McQueen's guilty plea, the County Court specifically ensured that he had conferred with his trial attorney as to possible defenses to the charges against him, and, just prior to entering the guilty plea, McQueen consulted with his counsel.  Plea Tr. at p. 9-10.  In light of the foregoing, it is plainly appropriate to presume that McQueen's counsel explained to petitioner the nature of the criminal charges brought against him in sufficient detail so as to give him notice of what he was being asked to admit, including the intent element of the crime to which he pleaded guilty. *Henderson*, 426 U.S. at 647; *Oppel*, 851 F.2d at 38 ("it is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges") (citing *Henderson*).  Additionally, as in *Oppel*, McQueen has not provided any evidence which indicates that he was unaware of the elements of the crime to which he pleaded guilty.  *Oppel*, 851 F.2d at 38.  Therefore, this Court may properly presume that McQueen's attorney informed petitioner of all of the elements of the attempted first degree assault charge – including the *mens rea* required for that crime – prior to the time he pleaded guilty to that crime.  *See Oppel*, 851 F.2d at 38; *see also Nicholas*, 2007 WL 1213417, at *5 (denying habeas petition which included claims that petitioner's guilty plea was deficient because transcript of plea did not demonstrate that petitioner understood "the intent of the offenses to which he pled guilty").

In light of the foregoing, the aspects of McQueen's amended petition which claim that the guilty plea he entered before Judge Breslin must be vacated because:  a) he failed to specifically acknowledge that he possessed the requisite intent necessary to sustain such conviction (*see* Amended Petition, Ground One); and b) factual statements made by McQueen at the time his guilty plea was taken were inadequate and/or insufficient to sustain his conviction on the attempted assault charge (*id.*, Ground Two) are denied.

**2.**     **Claims Challenging Trial Counsel's Effectiveness**

In his third ground for relief, petitioner claims that he received the ineffective assistance of trial counsel. *See* Amended Petition, Grounds Two, Three.

**i.**     **Clearly Established Supreme Court Precedent**

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must typically show both: a) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and b) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland*).

**ii.**     **Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

McQueen asserts various theories in support of his claim that he received the ineffective assistance of trial counsel. Specifically, he claims that his trial counsel: a) improperly waived, without petitioner's consent, his right to appear before the grand jury; b) failed to fully investigate whether McQueen had any viable defenses – including a claim that McQueen acted in self-defense – with respect to the charges against him, and thereafter inform petitioner of any such defense; and c) failed to investigate the viability of a defense that would have "negat[ed]" the crime charged. *See* Amended Petition, Ground Three.

11

Initially, the Court finds that McQueen's claim that he is entitled to habeas relief because counsel wrongfully prevented McQueen from testifying before the grand jury fails to acknowledge the established precedent which holds that an attorney's conduct relative to a defendant's right under New York state law to testify before the grand jury does not amount to constitutionally significant ineffective assistance. *See*, *e.g.*, *Simpson v. Conway*, No. 03-CV-0555, 2009 WL 2151897, at *3 (W.D.N.Y. July 16, 2009) ("as a matter of New York law, an attorney's failure to effectuate a defendant's right to testify before the grand jury ... does not constitute ineffective assistance of counsel"); *Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y. 1994) (collecting cases), *aff'd*, 58 F.3d 58 (2d Cir. 1995); *see also People v. Hunter*, 169 A.D.2d 538, 539 (1st Dep't 1991); *People v. Hamlin*, 153 A.D.2d 644, 645 (2d Dep't 1989).

As to McQueen's claims which argue that his trial counsel: a) did not explore and/or investigate the possibility of any viable defenses to the charges brought against McQueen (*see* Amended Petition, Ground Two); and b) failed to inform petitioner of the fruits of such research (*see id.*, Grounds One, Two), such claims are, as noted above, contradicted by the transcript at which McQueen entered his guilty plea. *See*, *e.g.*, Plea Tr. at p. 9. They are therefore rejected as being without substance.

### 3.    Due Process Claim

In his final claim, petitioner argues that his conviction was "obtained in violation of due process under the state and federal Constitution by way [sic] the plea was entered as demonstrated above." *See* Amended Petition, Ground Four.

However, as is discussed more fully above, this Court has determined that McQueen's guilty plea was knowingly, voluntarily, and intelligently made, and that all of petitioner's claims

challenging the propriety of that plea are without merit.  Since McQueen has not asserted any new theories or arguments in support of his final ground for relief, he has plainly failed to sustain his burden of proof concerning this claim.  *See Walker v. Johnston*, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Toland v. Walsh*, No. 04-CV0773, 2008 WL 65583, *14 (N.D.N.Y.), *appeal dismissed*, *Toland v. Walsh*, No. 08-0974-pr (2d Cir. Aug. 6, 2008).  This Court therefore denies the final claim asserted by McQueen in his amended habeas application.

## III.    CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[3]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

---

[3] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

ORDERED, that McQueen's Amended Petition (Dkt. No. 4) is **DENIED** and

**DISMISSED**, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and

Order upon the parties to this action, and it is further

ORDERED, that any state court records that were not filed in this action be returned

directly to the Attorney General at the conclusion of these proceedings (including any appeal of

this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Date: May 19, 2010

_____
United States District Court Judge

14